UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 0 9 2002

Michael N. Milby
Clerk of Court

MARTIN TORRES-CASTILLO )
                       )
v.                     )    CA B-01-009
                       )
E.M. TROMINSKI, et al  )
_____)

**PETITIONER'S SECOND SUPPLEMENTAL BRIEF ON THE
CONSTITUTIONAL ISSUES RAISED HEREIN**

Petitioner, through the undersigned, respectfully files the instant Supplemental Brief, further examining the constitutional issues raised herein, both on their own merit, and as an additional reason for adopting his suggested statutory means of avoiding same.

**I.  SUPPLEMENTAL ISSUES ADDRESSED**

A.  IT COULD VIOLATE BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS TO CONCLUDE THAT PETITIONER IS BOTH SUBJECT TO REMOVAL, AND INELIGIBLE FOR ANY FORM OF DISCRETIONARY RELIEF, AND IT IS THEREFORE INCUMBENT ON THE COURT TO ADOPT ANY REASONABLE INTERPRETATION OF THE STATUTE WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM AS APPLIED.

B. WHEN MR. TORRES PLED GUILTY TO THE CRIMINAL CHARGES, IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION CONSEQUENCES AT ALL, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO RETROACTIVELY APPLY A NEW STATUTE, UNDER WHICH DEPORTATION BECOMES A MANDATORY CONSEQUENCE OF HIS PLEA.

C.  IF APPLIED TO RENDER MR. TORRES SUBJECT TO REMOVAL, WITH NO POSSIBILITY OF SEEKING ANY FORM OF DISCRETIONARY RELIEF, OR OF EVER RETURNING LAWFULLY TO THIS COUNTRY, 8 U.S.C. §§1101(a)(48)(A) WOULD ALSO VIOLATE PROCEDURAL DUE PROCESS.

**II.  ARGUMENT**

A.  IT COULD VIOLATE BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS TO CONCLUDE THAT MR. TORRES IS SUBJECT TO REMOVAL, AND INELIGIBLE FOR ANY FORM OF DISCRETIONARY RELIEF, AND IT IS THEREFORE INCUMBENT UPON THE COURT TO ADOPT ANY REASONABLY POSSIBLE INTERPRETATION OF §1101(a)(48) WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM.

The existence of serious constitutional problems mandates that the Court seek a construction of the statute which would avoid them. *Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca,* 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Underdown,* 121 S.Ct. 2492 (2001), wherein the Supreme Court read a "reasonable time" limitation into INS' authority to detain former LPRs under deportation orders which could not be immediately effectuated. As the Court reasoned, *id.* at 2498 (some internal citations omitted):

> "[I]t is a cardinal principle" of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." ... We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation. See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he "deem [s] fit and proper" as limited to questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue"). For similar reasons, we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal- period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

Applying §§1101(a)(48)(A) herein, as it was interpreted in *Matter of Punu*, Interim Decision 3364 (BIA 1999), would raise grave constitutional concerns. It is therefore urged that this constitutes an additional reason for this Court to adopt an the

2

alternative construction of §1101(a)(48)(A), which Petitioner has already shown to be fairly possible, and which would also avoid these serious constitutional problems.

**B. UNDER THE LAW IN EFFECT WHEN PETITIONER PLED GUILTY TO THE CRIMINAL CHARGES IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION CONSEQUENCES, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO APPLY RETROACTIVELY A NEW STATUTE UNDER WHICH REMOVAL IS A MANDATORY CONSEQUENCE OF SUCH A DISPOSITION.**

As a lawful permanent resident, Mr. Torres has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See, Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

In *Placencia,* the Court further noted as follows, *id.*:

> The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.

The Court resolved the seeming tension between these principles as follows, *id.*, at 34-35:

> The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.

3

The Court then applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976), and concluded that the exclusion procedures were not *per se* constitutionally inadequate, but that there was a question as to whether or not the procedures actually received had been adequate, and remanded for further proceedings. In other words, the Court did *not* find that Congress' plenary control over immigration diminished the fundamental right involved. To the contrary, the Court analyzed the case as one involving Procedural Due Process, to which INS conceded she was entitled. There was no claim of any Substantive Due Process violation.

Nonetheless, the existence of this fundamental right, which, it must be emphasized, is enjoyed only by those who have a *right* to reside in this country, (i.e., by lawful permanent residents), triggers a "compelling state interest" analysis in determining whether a given abridgement passes Substantive Due Process muster. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997):

> As we stated recently in [*City of Boerne v.*] *Flores*, the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S., at 302, 113 S.Ct., at 1447.

A statute may violate Substantive Due Process either on its face, or, (as is the case herein), as applied in a particular situation. *See, Troxel v. Granville*, 120 S.Ct. 2054 (2000) (As applied, Washington statute providing that any person may petition court for visitation at any time, and that court may order visitation rights for any person when visitation may serve best interest of child, violated substantive due process rights of mother). *See also, Washington v. Glucksberg, supra* at 720 (The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain

4

fundamental rights and liberty interests," including parents' fundamental right to make decisions concerning the care, custody, and control of their children); *M.L.B. v. S.L.J.*, 117 S.Ct. 555,557 (1996) ("The interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment").

This analysis is underscored by the recent decision of the Supreme Court in *Zadvydas v. Davis, supra*. Rather than a fundamental right, *Zadvydas* involved a liberty interest, to wit, the indefinite detention of aliens under final deportation orders which could not be effectuated in a reasonable period of time. But by applying Substantive Due Process analysis to this issue, the Court reaffirmed the continued vitality of that doctrine, as applied to lawful permanent residents. *See also, Patel v. Zemski*, __ F.3d _ (3rd Cir. 2001), 2001 WL 1636227, (applying the same analysis to mandatory detention of LPRs convicted of certain offenses).[1]

---

[1] In *Reno v. Flores,* 507 U.S. 292 (1993), the Court held that a regulation permitting detained juvenile aliens to be released only to their parents, close relatives, or legal guardians, except in unusual and compelling circumstances, did not facially violate substantive due process. In reaching that conclusion, the Court noted, *id.* at 304, that "the child's fundamental rights must not be impaired." However, the Court concluded that there was, *in that case,* no such impairment. *Id.* at 302:

> [A]s we have said elsewhere, "juveniles, unlike adults, are always in some form of custody,' *Schall,* 467 U.S., at 265, 104 S.Ct., at 2410, and where the custody of the parent or legal guardian fails, the government may (indeed, we have said *must*) either exercise custody itself or appoint someone else to do so.

Since "child-care institutions [are] operated by the State in the exercise of its *parens patriae* authority," *id.* at 304, and the Court found the same principle applicable to juveniles detained by INS, the Court concluded that the juveniles could not assert a

5

Applying Substantive Due Process analysis to the case at bar, it is respectfully submitted that §1101(a)(48) is not "narrowly tailored" to serve a "compelling state interest," and that as applied herein, it violates Substantive Due Process. Mr. Torres has been a lawful permanent resident since 1991, and has extensive family ties in this country: lawful permanent residents, and United States citizens, who depend on him for financial and emotional support. In order to obtain the earliest possible release from custody, so that he could fulfill his obligations to his family, pursuant to a plea bargain, he pled *nolo contendere* to an offense of which he was factually innocent, and on May 26, 1995, was placed on probation, without adjudication of guilt, pursuant to Article 42.12, Section 5(a), Texas Code of Criminal Procedure.

Mr. Torres urges that no compelling state interest is served by a statute, or combination of statutes, which mandate the deportation of a lawful permanent resident, no matter his equities, for the sole reason that, pursuant to a plea bargain, he pled *nolo contendere* to an offense, at a time when (and in reliance on that fact that) such a plea carried no immigration consequences.

## C. RETROACTIVE APPLICATION ALSO OFFENDS PROCEDURAL DUE PROCESS, BECAUSE IT DEPRIVED RESPONDENT OF "FAIR NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT MIGHT BE IMPOSED AS A RESULT OF HIS PLEA.

The same result is reached through another series of Supreme Court cases, involving "fair notice." To apply *Matter of Punu* to Mr. Torres retroactively converts a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been

---

"fundamental right" to be free from custody, nor make any particular demands regarding that custody.

recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges*, 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid*. (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," by virtue of an amendment to the statute which can reasonably be interpreted otherwise, to wit, as applying only to dispositions which were, prior to enactment, "convictions" for immigration (or other) purposes. This occurs even though, under state law, there is no conviction, and never will be one, if Mr. Torres successfully completes his probation.

Therefore, **as applied herein**, §1101(a)(48)(A) is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63

> L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment. As the Supreme Court recently held in *BMW of North America v. Gore*, 517 U.S. 559, 574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Torres, there can be not question but that deportation is a "civil *penalt[y]*" imposed as a result of his criminal "conviction." It therefore violates Due

8

Process because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [2] *See also, Jideonwo v. INS*, 224 F.3d 692,697 (7th Cir. 2000): [3]

> The Supreme Court has held that applying a law retroactively such that it results in "manifest injustice" violates the Due Process Clause. *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 716 ... (1974). Manifest injustice may occur where a new law changes existing rights or imposes unanticipated obligations on a party without providing appropriate notice. *See id.* at 720,... *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 ... (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation."). Retrospective changes in INS procedure have been found to violate the due process rights of affected aliens. For example, in *Accardi v. Shaughnessy*, the Supreme Court held that retroactively changing a procedure for granting relief from deportation from one of discretion to one of predetermined results violated the Due Process Clause where it took away a procedure to which the alien-petitioner previously had a right prescribed by statute. 347 U.S. 260 ... (1954); *see also Tasios v. Reno*, 204 F.3d 544, 552 (4th Cir.2000). Similarly, in *Reyes-Hernandez*, we held that retroactive

---

[2] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

[3] Notably, *Jideonwo* was cited with approval by the Supreme Court in *INS v. St. Cyr, supra*, 121 S.Ct.at 2292.

9

> application of § 440(d) to an alien who had conceded a colorable defense to deportability in reliance on being considered for § 212(c) relief violated the alien's due process rights. 89 F.3d at 493 ...

See also, Griffon v. USDHHS, 802 F.2d 146 (5th Cir. 1986) (agency cannot construe statute such that civil fines may be imposed for conduct which predated statute).

Similarly, converting the effect of Mr. Torres' *nolo contendere* plea into automatic grounds for removal has an *ex post facto* effect. See, Knuck v. Wainwright, 759 F.2d 856,859 (11th Cir. 1985):

> In *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), dealing with a subsequent amendment to the same Florida statute at issue here, the Supreme Court held that two critical elements must be present for a criminal or penal law to be ex post facto: the statute must be retrospective, and it must be disadvantageous to the offender. The first element is met because Knuck's offense occurred in 1975 while the change in interpretation of the law did not occur until 1979. Second, Knuck is disadvantaged by the additional year he had to spend in prison and would have to spend on probation. The Court in *Weaver* observed that "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Id.* "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice...." *Id.* at 30, 101 S.Ct. at 965.

Having found an *ex post facto* violation, the Court did not reach the claim that the change in the interpretation also violated Due Process. *Id.*. However, this holding also supports Mr. Torres' claim that the retroactive application of a statute can, and in his case does, violate Due Process, and might also be viewed as being an unconstitutional *ex post facto* law.

Further, Mr. Torres urges that, as previously shown, an interpretation does exist which avoids these serious constitutional concerns. Under cases such as *Webster*, and *Cardoza-Fonseca*, the Court is therefore bound to adopt this alternative construction.

### III.  CONCLUSION

It is therefore urged that, in order to avoid the serious constitutional concerns which would result from the retroactive application to Mr. Torres of §1101(a)(48)(A), as interpreted in *Matter of Punu, supra,* this Court conclude that IIRIRA §322(c) is sufficiently ambiguous to trigger the *Landgraf* retroactivity analysis, which precludes application of the new definition of "conviction" herein, in that by its terms, the new definition applies only to convictions "entered before, on, or after the date of the enactment of this Act," and a disposition involving deferred adjudication was not a conviction prior to IIRIRA, and therefore it is not a "conviction ... entered before" its enactment.

Respectfully Submitted,

*/s/ Lisa S. Brodyaga*

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. Id: 1178
Texas State Bar: 03052800

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas 78551, on January 6, 2002.

11