22

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 5 2002

Michael N. Milby
Clerk of Court

MARTIN TORRES-CASTILLO,          )
                                 )
v.                               )          CA No. B-01-009
                                 )
E.M. TROMINSKI, ET AL.           )
_____)

PETITIONER'S CONSOLIDATED POINTS AND AUTHORITIES
ON THE CONSTITUTIONAL ISSUES RAISED HEREIN

TABLE OF CONTENTS

I.   THE FACTS AND PROCEDURAL HISTORY ..................... 1

II.  JURISDICTION......................................... 2

III. ISSUES PRESENTED .................................... 4

IV.  ARGUMENT ........................................... 4

A.  APPLYING 8 U.S.C. §1101(a)(48)(A) TO MR. RESIDENT WOULD CREATE
SERIOUS CONSTITUTIONAL PROBLEMS, AND IT IS THEREFORE INCUMBENT ON
THE COURT TO ADOPT ANY REASONABLY POSSIBLE INTERPRETATION OF SAID
PROVISION WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM.... 4

B.  UNDER THE HEIGHTENED CLARITY REQUIREMENT OF INS v. ST. CYR,
SUPRA, THERE EXISTS SUFFICIENT AMBIGUITY IN §322(c) OF IIRIRA TO
TRIGGER THE LANDGRAF RETROACTIVITY ANALYSIS, WHICH, IN TURN,
PRECLUDES APPLICATION OF THE NEW DEFINITION OF "CONVICTION" HEREIN,
INSOFAR AS IT WOULD HAVE GENUINE RETROACTIVE EFFECT........... 7

     1.  SECTION 322(c) OF IIRIRA, ESTABLISHING THE EFFECTIVE
     DATE FOR §1101(a)(48)(A), IS AT LEAST AS AMBIGUOUS AS THE
     PROVISIONS EXAMINED IN ST. CYR.......................... 8

     2. APPLICATION OF THE NEW DEFINITION OF CONVICTION TO MR.
     RESIDENT WOULD HAVE GENUINE RETROACTIVE EFFECT........... 13

C.  IT WOULD VIOLATE DUE PROCESS TO APPLY THE NEW DEFINITION OF
"CONVICTION" RETROACTIVELY WHERE THERE IS NO "RATIONAL LEGISLATIVE
PURPOSE" FOR SUCH RETROACTIVE APPLICATION, AND WHERE THE IMMIGRANT
RELIED ON THE FACT THAT DEFERRED ADJUDICATION WAS NOT A CONVICTION
AT THE TIME HE ENTERED HIS PLEA.............................. 13

D.  IT WOULD VIOLATE BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS TO CONCLUDE THAT MR. RESIDENT IS SUBJECT TO REMOVAL, AND INELIGIBLE FOR ANY FORM OF DISCRETIONARY RELIEF......................... 16

    1.  UNDER THE LAW IN EFFECT WHEN HE PLED NO CONTEST, IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION CONSEQUENCES, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO APPLY RETROACTIVELY A NEW STATUTE UNDER WHICH REMOVAL IS A MANDATORY CONSEQUENCE OF SUCH A DISPOSITION..................................... 16

    2.  RETROACTIVE APPLICATION ALSO OFFENDS PROCEDURAL DUE PROCESS, BECAUSE IT DEPRIVED PETITIONER OF "FAIR NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT MIGHT BE IMPOSED AS A RESULT OF HIS PLEA.................................... 20

E.  AN ALTERNATE CONSTRUCTION COULD ALSO RENDER THE STATUTE VOID FOR VAGUENESS ............................................. 24

F.  IN THE FURTHER ALTERNATIVE, PETITIONER MUST BE ALLOWED TO APPLY FOR  §212(c) RELIEF, UNDER *INS v. ST. CYR*.................... 25

V.  CONCLUSION.............................................. 27

CERTIFICATE OF SERVICE ..................................... 27

## TABLE OF AUTHORITIES

### CASES

*Arce v. Walker*,
    139 F.3d 329 (2nd Cir. 1998)  . . . . . . . . . . . . . . 21

*BMW of North America v. Gore*,
    517 U.S. 559 (1996)  . . . . . . . . . . . . . . . . 21, 22

*Bouie v. City of Columbia*,
    378 U.S. 347 (1964)  . . . . . . . . . . . . . . . . . . 21

*Bridges v. Wixon,*
        326 U.S. 135 (1945) . . . . . . . . . . . . . . . . . . 16, 20

*Calcano v. INS,*
        121 S.Ct. 2268 (2001) . . . . . . . . . . . . . . . . 2-4

*Chevron U.S.A., Inc. v. NRDC,*
        467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . 9

*Copeland v. Merrill Lynch,*
        47 F.3d 1415 (5th Cir.1995) . . . . . . . . . . . . . 4

*Griffon v. USDHHS,*
        802 F.2d 146 (5ᵗʰ Cir. 1986) . . . . . . . . . . . . . 23

*Harisiades v. Shaughnessy,*
        342 U.S. 580 (1952) . . . . . . . . . . . . . . . . . 14

*Hays County Guardian v. Supple,*
        969 F.2d 111 (5ᵗʰ Cir. 1992) . . . . . . . . . . . . . 10

*In re Hanserd,*
        123 F.3d 922 (6ᵗʰ Cir. 1997) . . . . . . . . . . . . . 9

*INS v. Cardoza-Fonseca,*
        480 U.S. 421(1987) . . . . . . . . . . . . . . . 6, 26, 27

*INS v. St. Cyr,*
        121 S.Ct. 2271 (2001) . . . . 2-4, 7-9, 13, 14, 22, 25, 27

*Jideonwo v. INS,*
        224 F.3d 692 (7ᵗʰ Cir. 2000) . . . . . . . . . . 7, 15, 22

*Jordan v. DeGeorge,*
        341 U.S. 223 (1951) . . . . . . . . . . . . . . . 24, 28

*Kim v. Ziglar,*
        F.3d    , (9ᵗʰ Cir. 2002), 2002 WL 21987 . . . . . . . 18

*Knuck v. Wainwright,*
        759 F.2d 856 (11ᵗʰ Cir. 1985) . . . . . . . . . . . . 23

*LaGuerre v. Reno,*
        164 F.3d 1035 (7ᵗʰ Cir. 1998) . . . . . . . . . . . . 15

iii

*Landgraf v. USI Films,*
       511 U.S. 244 (1994)  . . . . . . . . . . i, 7, 8, 22, 25, 26

*Landon v. Plasencia,*
       459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . 16

*Lankford v. Idaho,*
       500 U.S. 110 (1991) . . . . . . . . . . . . . . . . 21

*Lindh v. Murphy,*
       521 U.S. 320 (1997) . . . . . . . . . . . . . . . . . 9

*Loa-Herrera v. Trominski,*
       231 F.3d 984 (5ᵗʰ Cir. 2000) . . . . . . . . . . . . . 7

*M.L.B. v. S.L.J.,*
       117 S.Ct. 555 (1996) . . . . . . . . . . . . . . 16, 18

*Martinez-Montoya v. INS,*
       904 F.2d 1018 (5ᵗʰ Cir. 1990)  . . . . . . . 1, 2, 10, 13

*Max-George v. Reno,*
       205 F.3d 194 (5ᵗʰ Cir. 2000) . . . . . . . . . . . . 2, 3

*Miller v. Florida,*
       482 U.S. 423 (1987) . . . . . . . . . . . . . . . . 21

*Mohammed v. Ashcroft,*
       261 F.3d 1244 (11ᵗʰ Cir. 2001) . . . . . . . . . . . 11

*Moore v. City of East Cleveland,*
       431 U.S. 494 (1977) . . . . . . . . . . . . . . . . 16

*Moosa v. INS,*
       171 F.3d 994 (5ᵗʰ Cir. 1999) . . . . . . . . . 12, 13, 20

*Patel v. Zemski,*
        F.3d    (3ʳᵈ Cir. 2001), 2001 WL 1636227 . . . . . . 18

*Pension Benefit Guaranty Corp. v. Gray,*
       467 U.S. 717 (1984) . . . . . . . . . . . . . . . . 14

*RecoverEdge v. Pentecost,*
       44 F.3d 1284 (5ᵗʰ Cir. 1995) . . . . . . . . . . . . . 4

*Reno v. American-Arab Anti Discrimination Committee,*
    525 U.S. 471 (1999)  . . . . . . . . . . . . . . . . . 20

*Reno v. Flores,*
    507 U.S. 292 (1993)  . . . . . . . . . . . . . . . . 18

*Requena-Rodriguez v. Pasquarell,*
    190 F.3d 299 (5th Cir. 1999)  . . . . . . . . . . . . 3

*Rivera-Sanchez v. Reno,*
    198 F.3d 545 (5th Cir. 1999)  . . . . . . . . . . . . 3

*Salahuddin v. Mead,*
    174 F.3d 271 (2nd Cir. 1999).  . . . . . . . . . . . . 9

*Santos v. Reno,*
    228 F.3d 591 (5th Cir. 2000)  . . . . . . . . . . . . 3

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)  . . . . . . . . . . . . . . . . 22

*Stanley v. Illinois,*
    405 U.S. 645 (1972)  . . . . . . . . . . . . . . . . 16

*Swain v. Pressley,*
    430 U.S. 372 (1977)  . . . . . . . . . . . . . . . 2, 3

*Troxel v. Granville,*
    120 S.Ct. 2054 (2000)  . . . . . . . . . . . . . . . 18

*U.S. v. Ridlehuber,*
    11 F.3d 516 (5th Cir. 1993)  . . . . . . . . . . . . 10

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)  . . . . . . . . . . . . . . . . 17

*Webster v. Reproductive Health Services,*
    109 S.Ct. 3040 (1989)  . . . . . . . . . . . . . . 2, 5

*Zadvydas v. Davis,*
    121 S.Ct. 2491 (2001)  . . . . . . . . . . . . 3, 6, 18

v

## STATUTES

8 U.S.C. §1101(a)(43)(F) . . . . . . . . . . . . . . . . . 10

8 U.S.C. §1101(a)(43)(G) . . . . . . . . . . . . . . . . . 10

8 U.S.C. §1101(a)(43)(N) . . . . . . . . . . . . . . . . . 10

8 U.S.C. §1101(a)(43)(P) . . . . . . . . . . . . . . . . . 10

8 U.S.C. §1101(a)(48)(A) . . . . . . . . . i, 1, 5, 6, 8, 9, 20

8 U.S.C. §1101(a)(48)(B) . . . . . . . . . . . . . . . . . 9

8 U.S.C. §1105a(c) . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1182(a)(2)(B) . . . . . . . . . . . . . . . 10, 12

8 U.S.C. §1182(c) ["§212(c)"] . . . . ii, 1, 2, 5, 13, 15, 25, 28

8 U.S.C. §1227(a)(2) . . . . . . . . . . . . . . . . . . . 5

8 U.S.C. §1227(a)(2)(A)(i) . . . . . . . . . . . . . . . . 1

8 U.S.C. §1227(a)(2)(A)(iii) . . . . . . . . . . . . . . . 1

8 U.S.C. §1252 . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . 3, 4

IIRIRA §304(b) . . . . . . . . . . . . . . . . . . . . . 26

IIRIRA §322 . . . . . . . . . . . . . . . . . . . . . . . 10

IIRIRA §322(a) . . . . . . . . . . . . . . . . . . . . 10-12

IIRIRA §322(a)(1) . . . . . . . . . . . . . . . . . . . . 9

IIRIRA §322(a)(2) . . . . . . . . . . . . . . . . . . . . 10

IIRIRA §322(c) . . . . . . . . . . . . . i, 5, 6, 8, 10-12, 27

Immigration Reform and Control Act, ("IRCA")
    §245A . . . . . . . . . . . . . . . . . . . . . . . . 10

Texas Code of Criminal Procedure,
    Article 42.12, Section 5(a) . . . . . . . . . . . . . 19

vi

## ADMINISTRATIVE DECISIONS

*Matter of Punu*,
Interim Decision 3364 (BIA 1999) . . . . . . . . . . . 6, 20

*Matter of Rojas,*
Interim Decision 3451 (BIA 2001) . . . . . . . . . . . . . 7

*Matter of Soriano,*
21 I&N Dec. 516 (BIA 1996; AG 1997) . . . . . . . 2, 8, 13

*Matter of Valdez,*
21 I. & N. Dec. 703 (BIA 1997) . . . . . . . . . . . . . . 8

## OTHER AUTHORITIES

Nancy Morawetz,
"Rethinking Retroactive Deportation Laws and the
Due Process Clause," NYU Law Rev., Vol 73, No. 1,
April 1998 . . . . . . . . . . . . . . . . . . . . . . . . 20

Petitioner, through counsel, respectfully files the instant brief, consolidating and clarifying the jurisdictional arguments, and the constitutional bases for holding that he is not subject to removal, and that in the alternative, he is eligible for §212(c) relief.

## I.   THE PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner ("Mr. Torres") is a native and citizen of Mexico, who was admitted to the U.S. as a lawful permanent resident on October 25, 1991. On May 26, 1995, pursuant to his plea of nolo contendere, he was placed on probation, without adjudication of guilt, on a sexual assault charge.  Such proceedings did not then constitute a "conviction" for immigration purposes, and did not render him deportable. *Martinez-Montoya* v. *INS,* 904 F.2d 1018 (5th Cir. 1990).

Mr. Torres was innocent of the charges, insofar as the sexual relations at issue were consensual. Shortly before he entered his plea, the court-appointed investigator obtained a tape-recording of the alleged victim, explaining what "really happened" to her boy-friend, which tape exonerated him. However, Mr. Torres was detained at the time. His family was waiting for him, so that they could migrate North to work for the summer, and he was very anxious to be released.  So he agreed to the plea bargain upon, being assured that upon acceptance thereof by the Court, he would be immediately released from custody, and that upon successful completion of his probation, the charges would be dismissed, and his record cleansed. To date, he has kept his end of the bargain.

But on September 30, 1996, Congress enacted IIRIRA.   Included therein was (new) 8 U.S.C. §1101(a)(48)(A), purporting to define "conviction" in a way which encompassed deferred adjudication proceedings.  And on August 6, 1997, INS issued a Notice to Appear, alleging that Mr. Torres was deportable under 8 U.S.C. §§1227(a)(2)(A)(i) and (iii).   He denied the allegations, and contested removability. But on July 29, 1998, an Immigration Judge in Harlingen, Texas, ordered his removal to Mexico.

Mr. Torres appealed.  He urged that deferred adjudication was not a conviction where there had been a plea bargain under *Martinez-Montoya*.  As in *Matter of Soriano,* 21 I&N Dec. 516 (BIA 1996; AG 1997), which allowed LPRs who conceded deportability when §212(c) relief was available to reopen proceedings and contest the charges, Mr. Torres also asserted that it would constitute "mouse-trapping," and violate Due Process, to apply the new definition of "conviction" to him. Since it is incumbent upon the BIA, as well as the federal judiciary, to seek a manner of interpreting a statute which avoids serious constitutional infirmities, under *Webster v. Reproductive Health Services*, 109 S.Ct. 3040 (1989), he urged that the statute be interpreted as not applying to him.  But on September 29, 2000, the BIA dismissed his appeal.

Pursuant to *Max-George v. Reno,* 205 F.3d 194,200-201 (5th Cir. 2000), holding that IIRIRA repealed §2241 habeas jurisdiction of final orders of removal, but that substantial constitutional questions would be reviewed by the Fifth Circuit, Mr. Torres filed a timely petition for review.  On December 21, 2000, the Fifth Circuit granted INS' motion to dismiss for lack of jurisdiction. No reasons were given, and no further review was possible.  INS ordered Mr. Torres to report for deportation on February 8, 2001, and on January 17, 2001, he filed the instant petition.  He based jurisdiction on 28 U.S.C. §2241, and the Suspension Clause, claiming that the limited review provided by the Fifth Circuit was an inadequate substitute for habeas corpus. *Swain v. Pressley,* 430 U.S. 372 (1977). He also noted that *certiorari* had been accepted in *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), and *Calcano v. INS,* 121 S.Ct. 2268 (2001), and that the resolution of these cases would control the jurisdictional issues presented herein.

## II.  JURISDICTION

In June 2001, the Supreme Court issued a trio of decisions, *St.*

2

*Cyr, supra; Calcano, supra,* and *Zadvydas v. Davis,* 121 S.Ct. 2491 (2001), which collectively control most of the issues presented herein, including jurisdiction. *St. Cyr* and *Calcano* reconfirm that habeas review of final orders of removal, under 28 U.S.C. §2241, is still be available to immigrants such as Petitioner, and place constitutional limits on retroactive legislation, while *Zadvydas* cements Substantive Due process analysis in immigration cases.

INS has argued that because the Fifth Circuit rejected Mr. Torres' Petition for review, this Honorable Court lacks jurisdiction over the instant petition. However, this occurred **before** *St. Cyr* and *Calcano*, which overruled *Max-George v. Reno*, 205 F.3d 194 (5ᵗʰ Cir. 2000), and restored **statutory** habeas corpus review under 28 U.S.C. §2241. The limited review available under *Max-George* was an inadequate substitute for habeas corpus under *Swain v. Pressley*, *supra*, particularly where, as here, the Court dismissed the petition on motion of the INS, without giving any reasons. This procedure precluded further review, in the form of petitions for rehearing, for *en banc* consideration, or for *certiorarai*.

To the extent that the cases cited by INS are still "good law" [1] after *St. Cyr* and *Calcano,* they are inapplicable. As transitional cases, they were based on 8 U.S.C. §1105a(c), and concomitant findings that the immigrants had not exhausted their administrative remedies by not raising specific issues before the Fifth Circuit, or that the issue had already been decided by that Court, adversely to the immigrant. However, the case at bar arises under the permanent rules, (8 U.S.C. §1252), and §1105a(c) is not implicated.

---

[1] To wit, *Santos v. Reno,* 228 F.3d 591 (5ᵗʰ Cir. 2000); *Rivera-Sanchez v. Reno,* 198 F.3d 545 (5ᵗʰ Cir. 1999) and *Requena-Rodriguez v. Pasquarell,* 190 F.3d 299 (5ᵗʰ Cir. 1999).

3

Nor do the doctrines of collateral estoppel, issue preclusion,
etc., apply.  As held in *St. Cyr* and *Calcano,* the Fifth Circuit was
not a court of "competent jurisdiction" to hear Mr. Torres'
constitutional claims.  Consequently, this Honorable Court has
habeas jurisdiction under 28 U.S.C. §2241.

### III.  ISSUES PRESENTED

A.   WHERE, AS HERE, APPLICATION OF A GIVEN STATUTE RAISES SERIOUS
CONSTITUTIONAL ISSUES, IT IS INCUMBENT ON THE COURT TO ADOPT ANY
REASONABLE INTERPRETATION OF THE STATUTE WHICH DOES NOT RENDER IT
CONSTITUTIONALLY INFIRM AS APPLIED.

---

*Copeland v. Merrill Lynch,* 47 F.3d 1415,1421 (5th Cir.1995)
(collateral estoppel bars litigation of issues "previously decided
in another proceeding by a court of competent jurisdiction"); and
*RecoverEdge v. Pentecost*, 44 F.3d 1284,1290 (5th Cir. 1995):

> Collateral estoppel depends on three elements: (1) the
> issue at stake must be identical to the one involved in
> the prior action; (2) the issue must have been actually
> litigated in the prior action; and (3) the determination
> of the issue in the prior action must have been a
> necessary part of the judgment in that earlier action.
> *Sheerin v.* Davis (In re Davis), 3 F.3d 113,114 (5th
> Cir.1993); *see also Parklane Hosiery Co. v. Shore,* 439
> U.S. 322, 326 & n. 5, 99 S.Ct. 645, 649 & n. 5, 58
> L.Ed.2d 552 (1979). [FN12]
>
> FN12.  In some cases we have recognized a fourth
> requirement that there be "no special circumstance that
> would render preclusion inappropriate or unfair." *United
> States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994); *see,
> e.g., id.; Universal Am. Barge Corp. v. J- Chem, Inc.,*
> 946 F.2d 1131, 1136 (5th Cir.1991); *see also* 18 Charles
> A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal
> Practice and Procedure* §§ 4426, at 264-65 (1981).

In addition to the fact that the Fifth Circuit lacked jurisdiction
under *Calcano, supra,* that Court's summary treatment of the issues,
in a manner which permitted of no further review, is a "special
circumstance that would render preclusion inappropriate or unfair."

4

B.  A REASONABLE INTERPRETATION EXISTS OF 8 U.S.C. §1101(a)(48)(a)
WHICH AVOIDS THE CONSTITUTIONAL ISSUES OTHERWISE RAISED HEREIN, IN
THAT UNDER THE HEIGHTENED CLARITY REQUIREMENT OF *INS v. ST. CYR,
SUPRA*, THERE EXISTS SUFFICIENT AMBIGUITY IN §322(c) OF IIRIRA TO
TRIGGER THE *LANDGRAF* RETROACTIVITY ANALYSIS, WHICH, IN TURN,
PRECLUDES APPLICATION OF THE NEW DEFINITION OF "CONVICTION" HEREIN,
INSOFAR AS IT WOULD HAVE GENUINE RETROACTIVE EFFECT.

C.  IN THE ALTERNATIVE, WHERE THERE IS NO "RATIONAL LEGISLATIVE
PURPOSE" FOR SUCH RETROACTIVE APPLICATION, AND WHERE PETITIONER
RELIED ON THE FACT THAT DEFERRED ADJUDICATION WAS NOT A CONVICTION
FOR IMMIGRATION PURPOSES IT WOULD VIOLATE DUE PROCESS TO APPLY THE
NEW DEFINITION OF "CONVICTION" RETROACTIVELY.

D.  IT WOULD VIOLATE BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS TO
CONCLUDE THAT PETITIONER IS BOTH SUBJECT TO REMOVAL, AND INELIGIBLE
FOR ANY FORM OF DISCRETIONARY RELIEF.

    1. WHEN MR. TORRES PLED NO CONTEST, IN EXCHANGE FOR
DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO
IMMIGRATION CONSEQUENCES, AND IT VIOLATES SUBSTANTIVE DUE
PROCESS TO RETROACTIVELY APPLY A NEW STATUTE, UNDER WHICH
DEPORTATION BECOMES A MANDATORY CONSEQUENCE OF HIS PLEA.

    2.  IF APPLIED TO RENDER MR. TORRES SUBJECT TO REMOVAL,
WITH NO POSSIBILITY OF DISCRETIONARY RELIEF, OR OF EVER
RETURNING LAWFULLY TO THIS COUNTRY, §1101(a)(48)(A) WOULD
ALSO VIOLATE PROCEDURAL DUE PROCESS.

E.  AN ALTERNATE CONSTRUCTION WOULD RENDER 8 U.S.C. §1101(a)(48)(A)
AND §1227(a)(2)(A)(iii) VOID FOR VAGUENESS.

F.  IN THE FURTHER ALTERNATIVE, PETITIONER MUST BE ALLOWED TO APPLY
FOR §212(c) RELIEF, PURSUANT TO *INS v. ST. CYR, SUPRA*.

## IV.  ARGUMENT

**A.  APPLYING 8 U.S.C. §1101(a)(48)(A) TO MR. TORRES WOULD CREATE
SERIOUS CONSTITUTIONAL PROBLEMS, AND IT IS THEREFORE INCUMBENT ON
THE COURT TO ADOPT ANY REASONABLY POSSIBLE INTERPRETATION OF SAID
PROVISION WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM.**

The existence of serious constitutional problems mandates that the
Court seek a construction of the statute which would avoid them.
*Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989)

(where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca*, 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Davis, supra*, wherein the Supreme Court read a "reasonable time" limitation into INS' authority to detain former LPRs under deportation orders which could not be immediately effectuated. As the Court reasoned, *id.* at 2498 (some internal citations omitted):

> "[I]t is a cardinal principle" of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." ... We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation. See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he "deem [s] fit and proper" as limited to questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue"). For similar reasons, we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal- period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

Applying §1101(a)(48)(A) herein, as it was interpreted in *Matter of Punu*, Interim Decision 3364 (BIA 1999), would raise grave constitutional concerns. It is therefore urged that this Court must adopt any alternative construction of §1101(a)(48)(A), which would avoid these constitutional problems. As is shown below, such an alternative construction is not only possible, but, it is urged, is actually mandated by the plain language of IIRIRA §322(c).

6

**B.  UNDER THE HEIGHTENED CLARITY REQUIREMENT OF *INS v. ST. CYR,
*SUPRA*, THERE EXISTS SUFFICIENT AMBIGUITY IN §322(c) OF IIRIRA TO
TRIGGER THE *LANDGRAF* RETROACTIVITY ANALYSIS, WHICH, IN TURN,
PRECLUDES APPLICATION OF THE NEW DEFINITION OF "CONVICTION" HEREIN,
INSOFAR AS IT WOULD HAVE GENUINE RETROACTIVE EFFECT.**

In *INS v. St. Cyr, supra,* the Supreme Court applied a heightened
clarity standard for determining whether a deportation statute is
sufficiently vague to trigger retroactivity analysis under *Landgraf
v. USI Films,* 511 U.S. 244 (1994).  As the Court noted, 121 S.Ct.
at 2279 (internal citations omitted) (footnote in original):

> First, as a general matter, when a particular
> interpretation of a statute invokes the outer limits of
> Congress' power, we expect a clear indication that
> Congress intended that result. ...    Second, if an
> otherwise acceptable construction of a statute would
> raise serious constitutional problems, and where an
> alternative interpretation of the statute is "fairly
> possible," ... we are obligated to construe the statute
> to avoid such problems. ...

These principles also apply to the Department of Justice.  As the
Fifth Circuit reminded INS in *Loa-Herrera v. Trominski,* 231 F.3d
984, 991 (5ᵗ. Cir. 2000) (footnote in original):

> [W]e note that the executive branch... has an independent
> duty to uphold the Constitution, irrespective of whether
> its actions are subject to judicial review.

*See also, Matter of Rojas,* I.D  3451, 23 I&N Dec. 117 (BIA 2001),
Board Member Lory Rosenberg, dissenting: [5]

---

[4]    The Supreme Court cited Board Member Rosenberg's reliance
argument in *St. Cyr, id.* at 2292 (Footnote 51 omitted):

> Relying upon settled practice, the advice of counsel, and
> perhaps even assurances in open court that the entry of
> the plea would not foreclose § 212(c) relief, a great
> number of defendants in Jideonwo's and St. Cyr's position
> agreed to plead guilty....   Now that prosecutors have
> received the benefit of these plea agreements, agreements

> As I noted in my dissenting opinion in *Matter of Valdez,*
> 21 I. & N. Dec. 703 (BIA 1997), the canons of statutory
> construction militate in favor of a restrictive
> interpretation of a statutory provision "'if a broader
> meaning would generate constitutional doubts.'".

As is more fully discussed below, to the extent IIRIRA §322(c) is ambiguous, the reasons for favoring the interpretation urged by the Petitioner herein are at least as compelling as those which the Supreme Court faced in *St. Cyr.* Furthermore, under the *Landgraf* analysis, it is obvious that the retroactive impact is far greater. In *St. Cyr,* the change was from possible deportation to mandatory deportation. Here, it is from no immigration consequences to mandatory deportation. Therefore, under *St. Cyr,* which was decided *after* the pertinent decisions of the BIA (and Fifth Circuit) herein, the new definition of "conviction" cannot be applied herein, and Mr. Torres is simply not subject to deportation. The instant order must be vacated, and the case remanded to the BIA with instructions to terminate proceedings.

**1. SECTION 322(c) OF IIRIRA, ESTABLISHING THE EFFECTIVE**

---

> that were likely facilitated by the aliens' belief in
> their continued eligibility for § 212(c) relief, it would
> surely be contrary to "familiar considerations of fair
> notice, reasonable reliance, and settled expectations,"
> ... to hold that IIRIRA's subsequent restrictions deprive
> them of any possibility of such relief. [FN52]

> FN52. The significance of that reliance is obvious to
> those who have participated in the exercise of the
> discretion that was previously available to delegates of
> the Attorney General under § 212(c).  See *In re Soriano,*
> 16 Immig. Rptr. B1-227, B1-238 to B1-239 (BIA 1996) (Lory
> D. Rosenberg, Board Member, concurring and dissenting)
> ("I find compelling policy and practical reasons to go
> beyond such a limited interpretation as the one the
> majority proposes in this case.  All of these people,
> and no doubt many others, had settled expectations to
> which they conformed their conduct").

**DATE FOR §1101(a)(48)(A), IS AT LEAST AS AMBIGUOUS AS THE PROVISIONS EXAMINED IN *ST. CYR*.**

In *St. Cyr*, INS claimed, *id.*, 121 S.Ct. at 2287 that:

> [T]he statute unambiguously communicates Congress' intent to apply the provisions of IIRIRA's Title III-A to all removals initiated after the effective date of the statute, and, in any event, its provisions only operate prospectively and not retrospectively.

But the Supreme Court found their arguments unconvincing. *Id.* at pp. 2287-2293. As the Court first noted, *id.* at 2288:

> The standard for finding such unambiguous direction is a demanding one. "[C]ases where this Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328, n. 4 ... (1997).

The "sustain[s] only one interpretation" test of *St. Cyr* requires a higher degree of clarity than the "plain language" standard of review.[4] This "heightened level of clarity ... is required only to justify the *retroactive* application of a newly enacted provision." *Salahuddin v. Mead*, 174 F.3d 271,275 (2nd Cir. 1999).[5]

In the case at bar, as in *St. Cyr,* it is submitted that the statute **can** sustain more than one interpretation, and that the interpretation urged by Mr. Torres conforms to the plain language of IIRIRA §322(c). IIRIRA §322(a)(1) defined, for the first time, the meaning of the term "conviction," to be codified at 8 U.S.C. §1101(a)(48)(A). It also enacted a new section, codified at §1101(a)(48)(B), which provides as follows:

---

[4]  *See, Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

[5]  *See also, In re Hanserd*, 123 F.3d 922,934 (6th Cir. 1997)

9

(B)   Any reference to a term of imprisonment or a
sentence with respect to an offense is deemed to include
the period of incarceration or confinement ordered by a
court of law regardless of any suspension of the
imposition or execution of that imprisonment or sentence
in whole or in part.

IIRIRA §322(a)(2) contains certain conforming amendments, to 8
U.S.C. §1101(a)(43)(F), (G), (N) and (P), and to §1182(a)(2)(B).
In other words, IIRIRA §322(a) includes not only the new definition
of "conviction," but also makes substantive modifications to the
manner in which terms of imprisonment and sentences are evaluated,
as well as a number of conforming amendments.   The effective date
for IIRIRA §322(a), including all of its subparts, is established
by §322(c), which provides as follows:

Effective Date. - The amendments made by subsection (a)
shall apply to convictions and sentences entered before,
on, or after the date of the enactment of this Act. ...

Thus, the issue at bar can be framed as follows:  is the "deferred
adjudication" disposition at issue herein a "conviction[] ...
entered before... the date of the enactment of this Act."  It is
respectfully submitted that it is not.

First, while the term "conviction" had not been defined by Congress
prior to IIRIRA, the Fifth Circuit had previously considered
precisely the question of whether a Texas "deferred adjudication"
was a "conviction" for immigration purposes and concluded that it
was not. *Martinez-Montoya, supra* at 1026 ("We therefore hold that
Martinez-Montoya has not been convicted within the meaning of
section 245A of the IRCA because he has not waived or exhausted his
direct appeals, nor has the appeals period lapsed.").  Thus it is
beyond question that prior to IIRIRA, deferred adjudication was **not**
a conviction.  Consequently, it was not a "conviction[] ... entered
before... the date of the enactment of this Act." If it was not a
conviction before the enactment of IIRIRA, it cannot be a
conviction entered before its enactment. To conclude otherwise

10

would be to indulge in "boot-strapping," or circular reasoning. [6]

The circular aspect of this reasoning distinguishes the instant case from *Mohammed v. Ashcroft,* 261 F.3d 1244 (11th Cir. 2001), retroactively characterizing a pre-IIRIRA **conviction** as an "aggravated felony."  The Eleventh Circuit held that the language of that statute met the Supreme Court's "sustain only one interpretation" test. There, Congress had provided, *id.* at 1249-50:

> Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.

Since the offense in that case *was* a "conviction" prior to the enactment of IIRIRA, this retroactivity language could sustain only one interpretation: it was an "aggravated felony" thereafter.

Nor does the interpretation urged herein read the retroactivity provisions out of the statute.  Because §322(a) contains multiple provisions, specifying that the amendments enacted therein apply to "convictions and sentences entered before... enactment" reaches offenses which would not be included, if §322(c) specified only that it applied to "sentences" entered prior to IIRIRA.

Consider, for example, an immigrant with two prior misdemeanor DWI

---

[6]    *See, e.g., U.S. v. Ridlehuber*, 11 F.3d 516, 524 (5th Cir. 1993) ("...Rule 404(b) prevents the government from bootstrapping evidence into this case."); and *Hays County Guardian v. Supple*, 969 F.2d 111,117 (5th Cir. 1992) ("Government property, however, does not automatically cease to be a designated public forum because the government restricts some speech on the property.  Otherwise, the restriction of speech on government property would be self-justifying. The restriction would disprove any intent to create a designated public forum, and the failure to create a public forum would justify the restriction of speech.  The Supreme Court has not adopted such circular reasoning.").

convictions, convicted of felony DWI in 1995. Assume that he was given a five year, suspended sentence, and placed on probation. In short, all three convictions, as well as the five year (suspended) sentence, occurred prior to the enactment of IIRIRA.

Prior to IIRIRA, §1182(a)(2)(B) rendered excludable (inadmissible):

> Any alien convicted of 2 or more offenses ... for which the aggregate sentences to confinement actually imposed were 5 years or more."

As a result of the amendments enacted by §322(a)(2)(B) of IIRIRA, §1182(a)(2)(B) now renders inadmissible any alien:

> convicted of 2 or more offenses ... for which the aggregate sentences to confinement were 5 years or more.

Prior to IIRIRA, our hypothetical immigrant was therefore clearly not excludable. And if IIRIRA §322(c) specified only that the amendments of §322(a) applied to "sentences" which pre-dated IIRIRA, (rather than "convictions and sentences"), the retroactivity clause "could sustain [more than] one interpretation." Specifically, it could have been plausibly argued that §1182(a)(2)(B) rendered immigrants excludable based on certain **convictions**, and that because Congress did not specify that the amendments of IIRIRA §322(a) applied to **convictions** which pre-dated IIRIRA, Congress did not intend that it apply to pre-IIRIRA **convictions**, regardless of when the *sentences* were imposed.

In *Moosa v. INS,* 171 F.3d 994 (5th Cir. 1999), the Court concluded that IIRIRA §322(a) did apply retroactively. However, Moosa "[did] not contest that the plain language of § 322(c) mandates retroactive application," *id* at. 497, and therefore he did not show that the interpretation urged herein would *not* "read its retroactivity provision out of the statute," *id.* Furthermore, the Court utilized the "plain language" standard, rather than the

12

"heightened level of clarity," and thus neither considered the circular aspect of its reasoning, nor examined whether any other interpretation was possible, as is required under *St. Cyr.*

### 2. APPLICATION OF THE NEW DEFINITION OF CONVICTION TO MR. TORRES WOULD HAVE GENUINE RETROACTIVE EFFECT.

Even more importantly, the Court in *Moosa* left open the question of whether the new definition could be applied retroactively where, as here, the plea agreement was made in reliance on its prior decision in *Martinez-Montoya. Moosa, supra*, 171 F.3d at 497:

> Next, Moosa asserts that applying the new definition of "conviction" to him presents retroactivity concerns... He asserts that he agreed to the deferred adjudication plea agreement "with an entirely different understanding of the immigration consequences of his plea". This assertion is not borne out by the facts. When Moosa entered into the plea agreement in January 1990, Martinez-Montoya had not been issued and Matter of M (a 1989 decision) was still the law.

The opposite is the case herein. When Mr. Torres arranged his plea bargain, it carried no immigration consequences. According to INS' theory, it has now been retroactively converted into an immigration "death sentence." It is therefore urged that even to the extent that *Moosa* remains good law, it does not apply herein.

### C. IT WOULD VIOLATE DUE PROCESS TO APPLY THE NEW DEFINITION OF "CONVICTION" RETROACTIVELY WHERE THERE IS NO "RATIONAL LEGISLATIVE PURPOSE" FOR SUCH RETROACTIVE APPLICATION, AND WHERE THE IMMIGRANT RELIED ON THE FACT THAT DEFERRED ADJUDICATION WAS NOT A CONVICTION.

The principles urged herein are not new. As noted above, in *Matter of Soriano, supra*, LPRs who had conceded deportability when §212(c) relief was available were allowed to reopen proceedings and contest the charges. For the same reasons, Mr. Torres asserts that it would constitute "mouse-trapping," and that it would violate Due Process, to apply the new definition of "conviction" to him.

13

It is true that Congress has the power to retroactively make specific conduct grounds for deportation, *St. Cyr, supra* at 2288 (emphasis added) ("Despite the dangers inherent in retroactive legislation, it is beyond dispute that, **within constitutional limits**, Congress has the power to enact laws with retrospective effect"). Those "constitutional limits" include the requirement that there be **separate justification for such retroactivity**. *Pension Benefit Guaranty Corp. v. Gray*, 467 U.S. 717,729-30 (1984) (internal citations omitted) (emphasis added):

> [R]etroactive legislation does have to meet a burden not faced by legislation that has only future effects. "It does not follow ... that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, **and the justifications for the latter may not suffice for the former**." ... But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose. [7]

No such separate justification exists herein. No rational legislative purpose is fulfilled by "mouse-trapping" an innocent

---

[7]    *See, Harisiades v. Shaughnessy,* 342 U.S. 580,593-96 (1952) where the Supreme Court rejected a constitutional challenge to legislation specifying that past membership in the Communist Party was grounds for deportation.. Prior legislation had made only present Communist Party membership grounds for deportation, and the Party had thereafter expelled non-citizen members. *Id.* 595-596:

> When the Communist Party as a matter of party strategy formally expelled alien members en masse, it destroyed any significance that discontinued membership might otherwise have as indication of change of heart by the individual. Congress may have believed that the party tactics threw upon the Government an almost impossible burden if it attempted to separate those who sincerely renounced Communist principles of force and violence from those who left the party the better to serve it.

man into accepting a plea bargain which is not a conviction and
carries immigration consequences, and then retroactively changing
the rules, such that he is later considered to have been convicted,
and is subject to mandatory deportation, with no possibility of
relief or hope of lawfully returning to the U.S. at a later date.

Because the reliance occurred at the guilt or innocence stage of
the proceedings, ascribing such an intent to Congress would be even
worse than in the cases where various Courts (including the Supreme
Court, in *St. Cyr*), have refused to accept that Congress would
"mouse-trap" immigrants into conceding deportability with the hope
of obtaining §212(c) relief, only to withdraw such relief.  *See,
for example, LaGuerre v. Reno,* 164 F.3d 1035,1041 (7th Cir. 1998):

> The relevant rule is that statutes which change primary
> (out of court) duties, for example statutes that impose
> new tort liabilities, are applied prospectively, while
> statutes that change merely procedures are applied
> retroactively. ... The reasoning behind this distinction
> is that people are much more likely to rely on
> substantive than procedural law.  But this implies that
> when it is the kind of procedural change that does
> disturb reasonable expectations, the presumption in favor
> of retroactive application is reversed.  Suppose a person
> facing deportation conceded deportability in reliance on
> having a good shot at a waiver of deportability.  In that
> event, to abolish such waiver for his class of deportees
> after he had relied by forgoing a challenge to
> deportability would pull the rug out from under him.  And
> in that case we have held that the abolition would not
> apply to him, would be prospective only. ...

*See also, Jideonwo v. INS*, 224 F.3d 692 (7th Cir. 2000) [8] (alien
presented a cognizable due process claim by showing that AEDPA
§440(d), rescinding his eligibility for relief under §212(c) of the

_____

[8]   *Jideonwo* was one of the cases examined by the Supreme Court
in *St. Cyr*, and cited as an example of exactly the type of
impermissible retroactivity at issue herein.   121 S.Ct. at 2292.

Immigration Act, had impermissible retroactive effect when applied to him, since he had relied on its availability at the time he pled guilty to the underlying offense);

For these reasons, Mr. Torres asserts that this Court should not ascribe to Congress an *intent* for the definition of "conviction" to include persons such as he, who, when faced with serious charges, decided that it was in his best interest to accept a plea bargain involving deferred adjudication, thereby avoiding immigration problems, but who is now subject to mandatory and permanent removal. This violates both procedural and substantive Due Process.

**D.  IT WOULD VIOLATE BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS TO CONCLUDE THAT MR. TORRES IS SUBJECT TO REMOVAL, AND INELIGIBLE FOR ANY FORM OF DISCRETIONARY RELIEF.**

**1.   UNDER THE LAW IN EFFECT WHEN HE PLED NO CONTEST, IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION CARRIED NO IMMIGRATION CONSEQUENCES, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO APPLY RETROACTIVELY A NEW STATUTE UNDER WHICH REMOVAL IS A MANDATORY CONSEQUENCE OF SUCH A DISPOSITION.**

As a lawful permanent resident, Mr. Torres has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See, Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon*, 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one.  She stands to lose the right "to stay and live and work in this land of freedom," ...  Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

In *Placencia,* the Court further noted as follows, *id.*:

16

> The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.

The Court resolved the seeming tension between these principles as follows, *id.*, at 34-35:

> The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.

The Court then applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976), and concluded that the exclusion procedures were not *per se* constitutionally inadequate, but that there was a question as to whether or not the procedures actually received had been adequate, and remanded for further proceedings. In other words, the Court did *not* find that Congress' plenary control over immigration diminished the fundamental right involved. To the contrary, the Court analyzed the case as one involving Procedural Due Process, to which INS conceded she was entitled. There was no claim of any Substantive Due Process violation.

Nonetheless, the existence of this fundamental right, which, it must be emphasized, is enjoyed only by those who have a *right* to reside in this country, (i.e., by lawful permanent residents), triggers a "compelling state interest" analysis in determining whether a given abridgement passes Substantive Due Process muster. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997):

> As we stated recently in [*City of Boerne v.*] *Flores*, the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."

17

507 U.S., at 302, 113 S.Ct., at 1447.

A statute may violate Substantive Due Process either on its face, or, (as is the case herein), as applied in a particular situation. *See, Troxel v. Granville*, 120 S.Ct. 2054 (2000) (As applied, Washington statute providing that any person may petition court for visitation at any time, and that court may order visitation rights for any person when visitation may serve best interest of child, violated substantive due process rights of mother). *See also, Washington v. Glucksberg, supra* at 720 (The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," including parents' fundamental right to make decisions concerning the care, custody, and control of their children); *M.L.B. v. S.L.J.*, 117 S.Ct. 555,557 (1996) ("The interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment").

This analysis is underscored by the recent decision of the Supreme Court in *Zadvydas v. Davis, supra*. Rather than a fundamental right, *Zadvydas* involved a liberty interest, to wit, the indefinite detention of aliens under final deportation orders which could not be effectuated in a reasonable period of time. But by applying Substantive Due Process analysis to this issue, the Court reaffirmed the continued vitality of that doctrine, as applied to lawful permanent residents. *See also, Kim v. Ziglar*, ___ F.3d ___, (9[th.] Cir. 2002), 2002 WL 21987, and *Patel v. Zemski*, ___ F.3d ___ (3rd Cir. 2001), 2001 WL 1636227 (applying the same analysis to mandatory detention of LPRs convicted of certain offenses).[9]

---

[9] In *Reno v. Flores*, 507 U.S. 292 (1993), the Court held that a regulation permitting detained juvenile aliens to be released only to their parents, close relatives, or legal guardians, except

18

Applying Substantive Due Process analysis to the case at bar, it is respectfully submitted that §1101(a)(48) is not narrowly tailored to serve a compelling state interest, and that as applied herein, it violates Substantive Due Process.  Mr. Torres has been a lawful permanent resident since 1991, and has extensive family ties in this country:  lawful permanent residents, and United States citizens, who depend on him for financial and emotional support. In order to obtain the earliest possible release from custody, so that he could fulfill his obligations to his family, pursuant to a plea bargain, he pled *nolo contendere* to an offense of which he was factually innocent, and on May 26, 1995, was placed on probation, without adjudication of guilt, pursuant to Article 42.12, Section 5(a), Texas Code of Criminal Procedure.

No legitimate interest, let alone a "compelling" one, is served by a statute or combination of statutes which mandate the deportation of a lawful permanent resident under these circumstances.

---

in unusual and compelling circumstances, did not facially violate substantive due process.  In reaching that conclusion, the Court noted, *id.* at 304, that "the child's fundamental rights must not be impaired."  However, the Court concluded that there was, *in that case,* no such impairment. *Id.* at 302:

> [A]s we have said elsewhere, "juveniles, unlike adults, are always in some form of custody,' *Schall,* 467 U.S., at 265, 104 S.Ct., at 2410, and where the custody of the parent or legal guardian fails, the government may (indeed, we have said *must*) either exercise custody itself or appoint someone else to do so.

Since "child-care institutions [are] operated by the State in the exercise of its *parens patriae* authority," *id.* at 304, and the Court found the same principle applicable to juveniles detained by INS, the Court concluded that the juveniles could not assert a "fundamental right" to be free from custody, nor make any particular demands regarding that custody.

19

## 2. RETROACTIVE APPLICATION ALSO OFFENDS PROCEDURAL DUE PROCESS, BECAUSE IT DEPRIVED PETITIONER OF "FAIR NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT MIGHT BE IMPOSED AS A RESULT OF HIS PLEA.

The same result is reached through another series of Supreme Court cases, involving "fair notice." To apply *Matter of Punu* and *Moosa v. INS* herein would retroactively convert a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443;  see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," by virtue of an amendment to the statute which can reasonably be interpreted otherwise, to wit, as applying only to dispositions which were, prior to enactment, "convictions" for immigration (or other) purposes. This occurs even though, under state law, there is no conviction, and never will be one, if Mr. Torres successfully completes his probation.

Therefore, **as applied herein**, §1101(a)(48)(A) violates the Due Process Clause, in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See*

20

*also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

Because they derive from the Due Process, rather than the Ex Post Facto Clause of the Constitution, these protections exist even though deportation is a civil penalty, rather than criminal punishment.  As the Supreme Court held in *BMW of North America v. Gore,* 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

> FN22. See *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111

21

S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Torres, there can be not question but that deportation is a "civil *penalt[y]*" imposed as a result of his criminal "conviction." It therefore violates Due Process because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." *See also, Jideonwo v. INS, supra*, at 697: [10]

The Supreme Court has held that applying a law retroactively such that it results in "manifest injustice" violates the Due Process Clause. *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 716 ... (1974). Manifest injustice may occur where a new law changes existing rights or imposes unanticipated obligations on a party without providing appropriate notice. *See id.* at 720,... *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 ... (1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation."). Retrospective changes in INS procedure have been found to violate the due process rights of affected aliens. For example, in *Accardi v. Shaughnessy*, the Supreme Court held that retroactively changing a

---

[10] *Jideonwo* was cited with approval in *St. Cyr, supra* at 2292.

procedure for granting relief from deportation from one
of discretion to one of predetermined results violated
the Due Process Clause where it took away a procedure to
which the alien-petitioner previously had a right
prescribed by statute. 347 U.S. 260 ... (1954); *see also*
*Tasios v. Reno*, 204 F.3d 544, 552 (4th Cir.2000).
Similarly, in *Reyes-Hernandez*, we held that retroactive
application of § 440(d) to an alien who had conceded a
colorable defense to deportability in reliance on being
considered for § 212(c) relief violated the alien's due
process rights. 89 F.3d at 493 ...

*See also, Griffon v. USDHHS*, 802 F.2d 146 (5th Cir. 1986) (agency
cannot construe statute such that civil fines may be imposed for
conduct which predated statute).

It can also be argued that converting a *nolo contendere* plea into
automatic grounds for removal has an *ex post facto* effect. *See,*
*Knuck v. Wainwright,* 759 F.2d 856,859 (11th Cir. 1985):

> In *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964,
> 67 L.Ed.2d 17 (1981), dealing with a subsequent amendment
> to the same Florida statute at issue here, the Supreme
> Court held that two critical elements must be present for
> a criminal or penal law to be ex post facto: the statute
> must be retrospective, and it must be disadvantageous to
> the offender. The first element is met because Knuck's
> offense occurred in 1975 while the change in
> interpretation of the law did not occur until 1979.
> Second, Knuck is disadvantaged by the additional year he
> had to spend in prison and would have to spend on
> probation. The Court in *Weaver* observed that "a law need
> not impair a 'vested right' to violate the *ex post facto*
> prohibition." *Id.* "Critical to relief under the *Ex Post*
> *Facto* Clause is not an individual's right to less
> punishment, but the lack of fair notice...." *Id.* at 30,
> 101 S.Ct. at 965.

Having found an *ex post facto* violation, the Court did not reach
the claim that the change in the interpretation also violated Due
Process. *Id.*. However, this holding also supports Mr. Torres'

23

claim that the retroactive application of a statute can, and in his case does, violate Due Process, and might also be viewed as being an unconstitutional *ex post facto* law.

Further, Mr. Torres urges that, as previously shown, an interpretation does exist which avoids these serious constitutional concerns. Under cases such as *Webster,* and *Cardoza-Fonseca*, the Court is therefore bound to adopt this alternative construction.

## E.  AN ALTERNATE CONSTRUCTION WOULD CREATE VAGUENESS PROBLEMS.

In the alternative, it is urged that, applying IIRIRA §322(c) herein would cause the statute to be void for vagueness, under *Jordan v. DeGeorge,* 341 U.S. 223, 230-31 (1951):

> This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law.... It should be emphasized that this statute does not declare certain conduct to be criminal. Its function is to apprise aliens of the consequences which follow after conviction and sentence of the requisite two crimes.

> Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation. The Court has stated that 'deportation is a drastic measure and at times the equivalent of banishment or exile * * *. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty.' ... We shall, therefore, test this statute under the established criteria of the 'void for vagueness' doctrine.

If a statute designed to "apprise aliens of the consequences which follow after conviction," can be void for vagueness, and therefore violate Due Process, one which retroactively turns a plea-bargained procedure into a conviction for immigration purposes is far worse.

24

**F.  IN THE FURTHER ALTERNATIVE, PETITIONER MUST BE ALLOWED TO APPLY FOR RELIEF UNDER §212(c) OF THE ACT, UNDER *INS v. ST. CYR, SUPRA*.**

In the alternative, the reasoning of *St. Cyr* mandates that Mr. Torres be allowed to apply for relief under §212(c) of the Act.

As seen above, *St Cyr*. was about retroactivity, not reliance.  The *possibility* of reliance entered only after the Court found that the retroactivity language could sustain more than one interpretation. At that point, the Court proceeded to the second step of the *Landgraf* analysis, determining whether the statute carried genuine retroactive effect.  In this context, the Court considered that an immigrant who relied on the prior state of the law could suffer adverse consequences. But the Court did not limit its ruling to such cases.   Rather, once it found that the statute would have genuine retroactive effect (in some cases), the Court concluded that it could not be applied retroactively.   Period.

A contrary result would be incredibly burdensome on the Courts and administrative agencies. It would require a mini-trial, in each case, to determine whether, as applied to the individual at bar, the statute could be applied retroactively. This is not what *Landgraf* and its progeny contemplates.  For example, in *Landgraf*, the Court stated the issue, and its holding, as follows, *id* at 247:

> The Civil Rights Act of 1991 (1991 Act or Act) creates a right to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964. ...  The Act further provides that any party may demand a trial by jury if such damages are sought... We granted certiorari to decide whether these provisions apply to a Title VII case that was pending on appeal when the statute was enacted.  We hold that they do not.

This language covered all cases  pending on appeal when the statute was enacted.  In *St. Cyr*, the Court considered whether retroactive

25

application would have "genuine retroactive effect." as applied to
an immigrant who was, at the time of his plea, eligible for §212(c)
relief. In so doing, the Court made the following observation *Id*.
at 2290, (footnote 44 in original)(emphasis added):

> The presumption against retroactive application of
> ambiguous statutory provisions, buttressed by "the
> longstanding principle of construing any lingering
> ambiguities in deportation statutes in favor of the
> alien," INS v. Cardoza-Fonseca, 480 U.S. 421, 449...
> (1987), forecloses the conclusion that, in enacting §
> 304(b), "Congress itself has affirmatively considered the
> potential unfairness of retroactive application and
> determined that it is an acceptable price to pay for the
> countervailing benefits." [FN44] ...
>
> FN44. **The legislative history is significant because,
> despite its comprehensive character, it contains no
> evidence that Congress specifically considered the
> question of the applicability of IIRIRA § 304(b) to pre-
> IIRIRA convictions.**

Congress' failure to specifically consider this question precludes
application of IIRIRA §304(b) to pre-IIRIRA convictions.   So
§212(c) relief remains available to LPRs with such convictions,
regardless of whether they resulted from guilty pleas, or following
trial.   As explained in *Landgraf,* at 272-73 (emphasis added):

> [W]hile the constitutional impediments to retroactive
> civil legislation are now modest, prospectivity remains
> the appropriate default rule.   Because it accords with
> widely held intuitions about how statutes ordinarily
> operate, a presumption against retroactivity will
> generally coincide with legislative and public
> expectations.   **Requiring clear intent assures that
> Congress itself has affirmatively considered the
> potential unfairness of retroactive application and
> determined that it is an acceptable price to pay for the
> countervailing benefits**.

In other words, where, as here, there is latent ambiguity in the
statute, and where, as here, there is no indication that Congress

26

affirmatively considered the "potential unfairness" of retroactive application of a statute, that statute cannot be retroactively applied, regardless of whether such application would, in an individual case, have "genuine retroactive effect." This is also mandated by the principle "'of construing any lingering ambiguities in deportation statutes in favor of the alien,'" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987), quoted in *St. Cyr, supra* at 247.

## V.  CONCLUSION

In conclusion, it is urged that this Court vacate the instant Order, and remand the case to the BIA, with instructions that proceedings be terminated, on the grounds that:

1.   IIRIRA §322(c) can sustain more than one interpretation, without reading it out of the statute.   Specifically, it can reasonably sustain the interpretation, consistent with the plain language thereof, that it applies only to dispositions which **were** considered to be "convictions" prior to the enactment of IIRIRA. Read this way, it would still apply, retroactively, to dispositions of criminal cases which were, prior to IIRIRA, considered to be *convictions*, regardless of when the *sentence* was imposed;

2.   An alternate construction would, under *INS v. St. Cyr*, be impermissible, in that it would violate Due Process, for a variety of reasons.   The legislative history does not demonstrate that Congress affirmatively considered the potential unfairness of retroactive application of the new definition to criminal dispositions which were not "convictions" prior to the enactment of IIRIRA, and there is no compelling state interest which would be served thereby.   Furthermore, it would increase the penalty, without prior notice, in violation of Due Process, and quite possibly, constitute an *ex post facto* violation as well.

27

3.  An alternate construction would also render the statute void
for vagueness, in that it would not adequately "apprise aliens of
the consequences which follow" the acceptance of a plea bargain for
deferred adjudication, as required by *Jordan v. DeGeorge, supra*.

In the alternative, it is urged that, for the same reasons, the
Court vacate the instant Order, and remand the case to the BIA,
with instructions that Mr. Torres be given an opportunity to apply
for §212(c) relief.

Respectfully Submitted,



Lisa S. Brodyaga,
REFUGIO DEL RIO GRANDE
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3226

                    CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-
class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711,
Harlingen, TX 78551, this 4th day of February, 2002.

                            28