

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 0 8 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| MARTIN TORRES-CASTILLO<br>Petitioner, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. B-01-009 |
| E.M. TROMINSKI, ET. AL,<br>Respondent. | §<br>§<br>§ | |

## MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION

### BACKGROUND

Petitioner, Mr. Torres-Castillo (hereinafter, Mr. Torres), is a native and citizen of Mexico who entered the United States as a lawful permanent resident on or about October 25, 1991. On May 26, 1995, Petitioner pleaded *nolo contendere* to sexual assault in the 350th District Court of Taylor County, Texas, and was placed under community supervision for a period of eight years. Mr. Torres alleges that at the time of the plea he relied on the fact that such proceedings did not constitute a "conviction" for immigration purposes. Petitioner states that he relied on this in determining how to proceed in the criminal case, even though he considered himself innocent of the criminal charges. Petitioner alleges that shortly before he entered his plea, the court-appointed investigator obtained a tape-recording of the alleged victim explaining what "really happened," which allegedly exonerated Mr. Torres. Petitioner argues that in order to obtain a speedy release from custody, and having been assured that the plea would not cause problems with his immigration status, he pleaded *nolo contendere*, and was placed under deferred adjudication.

On August 6, 1997 (two years and three months after his conviction), the Immigration and Naturalization Service (INS) issued a Notice to Appear (NTA), alleging removability under 8 U.S.C. Sections 1227(a)(2)(A)(i) and (iii). Mr. Torres denied the allegations and contested his removability. On July 29, 1998, the immigration judge found Petitioner deportable and ordered him removed from the United States to Mexico. Petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals (Board). On September 29, 2000, the Board issued a decision, without opinion, affirming the decision of the immigration judge.

Mr. Torres filed a timely petition for review with the Fifth Circuit Court of Appeals. On November 22, 2000, INS filed a motion to dismiss on the ground that 8 U.S.C. Section 1252(a)(2)(c) deprived the Fifth Circuit of jurisdiction over his petition. On December 21, 2000, the Fifth Circuit granted the motion to dismiss for lack of jurisdiction. On January 10, 2001, INS issued a letter ordering Mr. Torres to report for deportation on February 8, 2001.

Petitioner, on January 17, 2001, filed a Petition for Writ of Habeas Corpus with this Court. Petitioner alleges that the retroactive application of the new definition of "conviction" denies him Due Process. Mr. Torres states that at the time he pleaded *nolo contendere*, he relied on the availability of former Section 212(c) of the Immigration and Nationality Act (Act) and that AEDPA Section 440(d) should not apply to his plea because it predated its enactment. Furthermore, Petitioner states that even though Congress may create new grounds for deportation and make them retroactive, they must independently pass constitutional muster. Moreover, Petitioner also asserts that there is no rational relationship to a legitimate governmental purpose to be served by retroactively converting his plea of *nolo contendere*, not only into a conviction,

but into an aggravated felony. Lastly, Mr. Torres argues that he was prejudiced by the failure of the Board to consider his claim and said action violated his Due Process rights.

On March 14, 2001, Respondent filed a Motion to Dismiss alleging that this Court does not have jurisdiction over the Petition for Writ of Habeas Corpus. Respondent states that the appropriate place for a determination of the issues at hand is before the Fifth Circuit by a petition for review, not before the District Court under a habeas corpus petition.

## ISSUES

Petitioner seeks habeas relief pursuant to 28 U.S.C. Section 2241 and alleges that his Due Process rights were violated. Mr. Torres states that he relied on the availability of former Section 212(c) of the Immigration and Nationality Act when he pled *nolo contendere* to sexual assault and that the provisions of AEDPA and IIRIRA, which repealed discretionary relief from deportation should not apply retroactively to him. Petitioner also alleges that the Board's failure to fully consider his claim prejudiced him.

Respondent contends that this Court does not have jurisdiction to hear Petitioner's Writ of Habeas Corpus. Moreover, Respondent states that Petitioner is not eligible for relief pursuant to former Section 212(c) of the Act because he did not have the seven years lawful permanent resident required by the statute at the time of his plea.

## JURISDICTION

In *Immigration and Naturalization Service v. Enrico St. Cyr*, 121 S.Ct. 2271, the Supreme Court held that the District Court had jurisdiction to answer legal questions in a habeas corpus proceeding. For the INS to prevail, it must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear

statement of congressional intent to repeal habeas jurisdiction.[1] Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead Congress must articulate specific and unambiguous statutory directives to effect a repeal.[2] As a general rule, when a particular interpretation of a statute invokes the outer limits of Congress' power, a clear indication that Congress intended that result is expected.[3] The Court in *St. Cyr* held that habeas jurisdiction under Section 2241 was not repealed by Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).

This Court has jurisdiction to hear 28 U.S.C. Section 2241 writs of habeas corpus, brought by criminally deportable aliens subject to final orders of deportation, when certain circumstances are present. Petitioner has met the requirements necessary for this Court to have jurisdiction to hear his writ of habeas corpus.

## STANDARD

Before the effective dates of the AEDPA and IIRIRA, Section 212(c) of the Act of 1952 was interpreted to give the Attorney General broad discretion to waive deportation of resident aliens.[4] When AEDPA was enacted on April 24, 1996, 110 Stat. 1214, and IIRIRA was enacted on September 30, 1996, 110 Stat. 3009-546, the large class of aliens depending on Section 212(c)

---

[1] *Immigration and Naturalization Service v. Enrico St.* Cyr, 121 S.Ct. 2271 (2001).

[2] *Id.* (citing, *Ex Parte Yerger*, 8 Wall. at 105, 19 L.Ed. 332 (1869)).

[3] *Id.* (citing, *Edward J. DeBartolo Corp. V. Florida Gulf Coast Building & Contr. Trades Council* 485 U.S. 568, 575, 108 S. Ct. 1329, 99 L. Ed. 2d 645 (1988)).

[4] *Id.*

relief was reduced.[5] Section 401 of AEDPA identified a broad set of offenses for which convictions would preclude relief, and IIRIRA repealed Section 212(c) and replaced it with a new section excluding from the class anyone "convicted of an aggravated felony," 8 U.S.C. Section 1229b(a)(3).[6]

The Supreme Court in *St. Cyr*, held that 212(c) relief remains available for aliens whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for Section 212(c) relief at the time of their plea under the law then in effect. The Supreme Court relied on the analysis of *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L. Ed.2d 229 (1994), which held that Congress' intentions concerning the application of Cancellation of Removal procedures are ambiguous and that the statute imposes an impermissible retroactive effect on aliens who, in reliance on the possibility of Section 212(c) relief, pled guilty to aggravated felonies. In *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court held that "congressional enactments... will not be construed to have retroactive effect unless their language requires this result." A statute may not be applied retroactively, however, absent a clear indication from Congress that it intended such a result.[7] The standard for finding such unambiguous direction is a demanding one. In *Lindh v. Murphy*, 117 S.Ct. 2059 (1997), the Court held that "cases where this Court has found truly 'retroactive' effect adequately authorized

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

by statute have involved statutory language that was so clear that it could sustain only one interpretation."

In *St. Cyr*, the Court repeatedly states that the decision of whether a particular statute acts retroactively should be "informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations."[8] The Court in *St. Cyr* addressed the issue of reliance in general terms, meaning that aliens did not have to prove that they relied on Section 212(c) because when defendants were considering whether to enter into a plea agreement they were aware of the immigration consequences of their convictions. In *St. Cyr*, the Court stated that given the frequency with which Section 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer.[9] The Court in *St. Cyr* states that it would be contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations"[10] to hold that IIRIRA's subsequent restrictions deprive aliens of any possibility of 212(c) relief when defendants relied upon settled practice or the advice of counsel that the entry of a plea would not foreclose such relief.

New regulations have been promulgated which directly affect the Petitioner's ability to seek relief under former Section 212(c) of the Act, 8 U.S.C. Section 1182(c). Pursuant to 8

---

[8] *Martin v. Everett Hadix, et al.*, 119 S.Ct. 1998 (quoting *Landgraf* 511 U.S. at 270).

[9] *Immigration and Naturalization Service v. Enrico St. Cyr*, 121 S.Ct. 2271 (2001). *See also Magana-Pizano v. INS*, 200 F.3d 603 (stating "that an alien charged with a crime...would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented").

[10] *Landgraf v. USI Film Products*, 511 U.S. at 270.

C.F.R. Section 3.2(c)(2001) "a motion to reopen proceedings for consideration or further consideration of an application for relief under former Section 212(c) of the Act may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation."

## ANALYSIS

After a de novo review of this case and an evidentiary hearing, this Court has determined that Petitioner relied on the availability of former Section 212(c) relief at the time of his plea and that such relief remains available to him. This case should be remanded to the Board of Immigration Appeals ("BIA") with instructions that Petitioner be given an opportunity to apply for Section 212(c) relief.

The Supreme Court determined that the restrictions on Section 212(c) relief do not apply retroactively to aliens who pled guilty or *nolo contendere* prior to the enactment of IIRIRA and AEDPA.[11] Petitioner entered his plea before the enactment of these laws. Thus, Petitioner is eligible for 212(c) relief in light of the new regulations as referenced above. The Respondent argues that the Petitioner is ineligible for section 212(c) relief as he had not acquired seven years of unrelinquished lawful residence at the time of his plea on May 26, 1995. However, the regulations provide that "a motion to reopen proceedings for consideration or further consideration of an application for relief under Section 212(c) of the Act may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation."[12] Petitioner entered the United States as a lawful

---

[11] *Immigration and Naturalization Service v. Enrico St. Cyr*, 121 S.Ct. 2271 (2001)

[12] 8 C.F.R. Section 3.2(c)(1).

permanent resident on October 25, 1991, and his final order of deportation was entered on July 29, 1998. By utilizing this approach in calculating the number of years accrued by the Petitioner, Mr. Torres has the seven years of domicile necessary to qualify for Section 212(c) relief.

In *St. Cyr*, the Court states that the decision as to whether a statute is retroactive should be "informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." Mr. Torres relied on the availability of Section 212(c) relief when he pled. At the time of his pleading, the "settled expectations" and "reasonable reliance" was that aliens had the possibility of applying for discretionary relief at the time of their deportation proceedings. In immigration proceedings the "settled expectations" was that immigration proceedings took years. Because of this settled practice, attorneys would advise their clients that they had the possibility of Section 212(c) relief. The Court in *St. Cyr* cites *Landgraf v. USI Film Products*, which held that the statute imposes an impermissible retroactive effect on aliens who, in reliance on the **possibility** of Section 212(c) relief, pled guilty.

The Respondent's interpretation of *St. Cyr* is flawed because the government construes the last sentence of the opinion literally. The Court in *St. Cyr* focuses on "fair notice, reasonable reliance, and settled expectations," not time limitations. It would be contradictory for the Court in *St. Cyr* to use the language of reliance, and then essentially state the opposite by claiming that aliens not present in the United States for seven years as Legal Permanent Residents at the time of the plea were not eligible for 212(c) relief. This fact is true especially in light of past practices in immigration law that have caused the alien to rely on relief available. Furthermore, if the Court in *St. Cyr* would have meant what Respondent alleges, the Supreme Court's decision would be inconsistent with the new 8 C.F.R. Section 3.2(c) regulation which states that "a

motion to reopen proceedings for consideration of an application for relief under former Section 212(c) may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation." The possible inconsistency between the regulation and the Court's decision would be in reference to the time of eligibility for Section 212(c) relief. The regulations state that the alien would be eligible for relief if he proved that he was eligible before the final order of deportation. These regulations are in uniformity with the "settled expectations" that aliens had about former Section 212(c) relief. The Respondent construes the holding of *St. Cyr* to mean that relief is not available to the alien if the alien was not statutorily eligible at the time of the plea.

St. *Cyr* goes so far as to say that aliens do not have to prove their reliance because it was understood that they were aware of the relief available to them. However, the Respondent's espouse a defective interpretation of *St. Cyr* which would mean that aliens which relied on the settled practices of immigration law in the past would not be afforded relief because they would not be presently eligible according to statute. At the time the aliens pled, they were eligible to apply for 212(c) relief, even if it was in the future, because they knew they had the possibility of relief. The alien's past reliance does not disappear; the alien still relied on the possibility of relief and made decisions based on those premises.

It is not logical to predict that *St. Cyr* meant, in its holding, that an alien who pleaded guilty in reliance of 212(c) relief, and had been a Legal Permanent Resident for six years and twenty-nine days at the time of their plea would not be eligible for relief when he had his immigration hearing five months later. Before IIRIRA and AEDPA were enacted, the

immigration proceedings allowed aliens to apply for 212(c) relief at the time of their removal proceedings. This caused aliens to rely on the future availability of discretionary relief.

Respondent would have this Court construe *St. Cyr* strictly, applying it in a literal sense. This Court should not limit the holding of *St. Cyr* to just its literal interpretation because a literal construction of the decision would be equivalent to valuing form over substance. The purpose behind *St. Cyr* was to grant relief to aliens that pled guilty in reliance of the availability of Section 212(c) relief before the enactment of IIRIRA and AEDPA. This purpose would not be served if *St.Cyr* would be interpreted literally.

## RECOMMENDATION

For the reasons set forth above, Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241 should be GRANTED, and Petitioner should be allowed to apply for § 212(c) relief. Respondent's Motion to Dismiss should be DENIED.

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas this _____ day of May, 2002.

_____
Felix Recio
United States Magistrate Judge